EDWARD B. LEIGH

*v.*

HENRY D. LAUGHLIN.

*Opinion filed June 23, 1904—Rehearing denied October 17, 1904.*

CORPORATIONS—*when proof of collateral oral agreement of stockholder must be clear.* A stockholder and manager of a corporation who claims, by virtue of an alleged collateral agreement, to be jointly interested in a contract executed and carried out in the name of another person with the corporation, has the burden of establishing his claim by clear and satisfactory proof, particularly where such alleged oral agreement, if established, would be fraudulent as against the other stockholders of the corporation.

*Laughlin* v. *Leigh*, 112 Ill. App. 119, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. O. H. HORTON, Judge, presiding.

PENCE & CARPENTER, D. S. GREER, and JOHN P. AHRENS, for appellant.

SHOPE, MATHIS, ZANE & WEBBER, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

In this case there is no material disagreement between counsel as to the law. The question to be decided is one of fact, upon which the master in chancery to whom the issue was referred found in favor of appellee, and on exceptions to his report the circuit court decided in favor of appellant, and the Branch Appellate Court for the First District, which reviewed the evidence on appeal, arrived at the same conclusions as the master.

The suit grew out of a claim by appellant that he was jointly interested with appellee in a contract made by the latter with the Chicago Railway Equipment Company, a corporation, in which both parties were stockholders and of which appellant was general manager.

In the execution of the contract appellant acted in the name of appellee and as his agent in the purchase of shares of stock of the National Hollow Brake-Beam Company, another corporation, of which both parties were also stockholders. After the contract had been closed and the stock transferred to the appellee, the appellant, having in his possession certificates representing 26,223 shares of said stock received by him from the trustee under the contract and endorsed in blank by the appellee, made a division of the shares without the consent of the appellee, under the claim set up in this suit to one-half of said shares. Appellant inserted his own name in the blank power of attorney on the back of certain of the certificates, and as secretary and treasurer transferred 13,111 of the shares to himself and issued to himself a new certificate representing the same. He allotted to the appellee 13,112 shares and made a certificate therefor, but the certificates were never executed by any other officer of the corporation and they were retained by the appellant. Appellee then filed his bill in this case in the circuit court of Cook county against appellant, praying for an injunction and that defendant be directed to deliver or cause to be transferred to complainant the said certificates, and that complainant be declared the owner of the shares of stock represented thereby. The defendant answered, that while the contract under which the shares were purchased was in the name of complainant, it was in fact made for the benefit of both parties; that they were joint owners of the shares of stock purchased in complainant's name under the contract, by virtue of an oral collateral agreement, and that defendant made the division of the stock in accordance with such agreement. The issue was referred to a master in chancery to take the evidence and report his conclusions as to the facts and the law. He found that there was no collateral oral agreement as alleged by the defendant, and that the complainant was the owner of the stock. On the hear-

ing of exceptions to the report, the circuit court, while not formally ruling on the exceptions or sustaining any exception to a finding of facts, entered a decree reciting that the equities of the case were with the defendant, dissolving the injunction which had been granted and dismissing the bill for want of equity, at complainant's costs. On appeal to the Appellate Court for the First District the branch of that court found the controverted question of fact in accordance with the conclusions of the master and reversed the decree of the circuit court. The cause was thereupon remanded to the circuit court, with directions to grant to the complainant the specific relief prayed for in his bill, and from that judgment this appeal was prosecuted.

It is not possible to state in detail, within the limits of this opinion, the evidence, covering more than two thousand pages, relating to the controverted question of fact. In brief, the material facts are as follows: The Chicago Railway Equipment Company was a corporation manufacturing brake-beams, and was paying a yearly rental of $65,000 to the National Hollow Brake-Beam Company, another corporation, under a lease of the plant, patents and business of the latter corporation for a term of fifteen years from January 1, 1893. The complainant and defendant were stockholders in both corporations, and the defendant was vice-president and general manager of the equipment company. The large rental paid to the brake-beam company was very burdensome to the equipment company, and the complainant and defendant conferred together at different times for the purpose of devising some plan by which it could be reduced. . The defendant held over 26,000 shares of stock in the equipment company and was greatly interested in the question, while the complainant owned something over 500 shares and was, relatively, a small stockholder. Schemes were talked of, and a committee of stockholders was appointed in 1896 to consider the subject. Finally, at a

meeting of the stockholders of the equipment company
held on March 16, 1898, complainant submitted to that
corporation a written proposition that if the corporation
would pay, for his account, to the American Trust and
Savings Bank of Chicago, $100,000, with interest at six
per cent from April 6, 1897, and deliver to the said bank
$300,000 in bonds dated July 1, 1897, drawing interest at
five per cent, to be used for the purchase of the stock of
the brake-beam company other than his own, complain-
ant would either obtain a reduction of the rental to $5000
per annum or would himself pay the difference between
$65,000 per annum and $5000 per annum to the end of the
lease.    The shares purchased were to be transferred to
the complainant and re-issued to him, and were then to
be endorsed in blank and deposited in the bank, to be
held until the rent should be reduced.    The proposition
was accepted at a stockholders' meeting at which the
529 shares owned by the complainant were not voted, but
the defendant voted 26,993 shares in his own name and
61,000 shares under proxies.    The total vote in favor of
the proposition was 172,704 shares, of which the defend-
ant voted, as above stated, 87,993 shares.  The complain-
ant, for the purpose of carrying out his agreement with
the equipment company, the lessee, submitted to the
stockholders of the brake-beam company, the lessor, a
proposal to pay all of the other stockholders of that cor-
poration for their stock at par, either in cash or in the
bonds of the equipment company, at the election of the
stockholders, the certificates to be deposited during the
month of October, 1898, with said bank as trustee, prop-
erly endorsed for transfer to him.    The proposition was
accepted at a stockholders' meeting at which complain-
ant's shares were not voted.    He was the owner of 8000
shares and the defendant owned over 9000 shares in that
corporation.  Complainant was president and the defend-
ant was vice-president.  The shares represented at that
meeting were 44,765, of which the defendant voted in his

own name 11,157 shares and 18,000 by virtue of proxies, a majority of the votes in favor of the proposition. The American Trust and Savings Bank accepted the trust, and the equipment company paid to that bank the cash deposit of $100,000, with interest, and delivered to it the $300,000 of bonds. Complainant and defendant informed the trustee that the defendant was fully authorized to do all that was necessary to be done in regard to the trust, and the defendant assumed to a large extent the management of the transaction of gathering in the stock. Substantially all of the stock was bought in and endorsed to the complainant, and was re-issued to him and stood in his name on the books of the corporation. The contract, and everything done under it, was in his name, and the defendant was not known as a principal in the transaction. There was a proposal to exchange stock after the time limit had expired, and the trustee refused to make the transfer on the authority of the defendant, but required him to furnish written authority from the complainant, which the complainant furnished by letter dated December 3, 1898. When the transaction was completed and the trust was closed, the defendant receipted to the trustee in the name of the complainant, by himself as agent, for the bonds remaining unused and a small balance of cash not used and the shares acquired through the trust. The transaction was completed and the rent was reduced by the complainant, as he had agreed. The parties had been close and intimate friends and had been associated in business in different ways for years, but they differed about this matter, and defendant claimed that he was jointly interested with the complainant in the contract through a collateral oral agreement between them that they were to share equally in the profits of the transaction. They finally came to an open rupture about another matter on June 20, 1900, when complainant wrote a letter to the defendant absolutely refusing to comply with his demands. After receiving that letter

the defendant took the certificates which were in his possession, endorsed in blank, and made a division, taking half of them for himself and dating the transfer back to January, 1900. He also made up and entered accounts in the books between the parties, running back to the time of the transaction and corresponding with his present claim.

The foregoing are undisputed facts, and they show that the transaction, on its face, was with the complainant; that the stock was transferred to him on the books of the corporation and the title was in him, and that in the transaction the defendent assumed to act as the agent of the complainant. When defendant set up in his answer that he was jointly interested with the complainant in the profits accruing under the contract with his own corporation; that in accepting the proposition on behalf of the corporation he was in reality acting for himself, jointly with the complainant, and that he was a joint owner of the stock under the alleged collateral oral agreement, the burden of proof was upon him to establish his claim by clear and satisfactory proof. The parties, in their testimony, directly contradicted each other as to the existence of the agreement set up in defendant's answer, and they were the only persons having any direct knowledge of the fact. It was admitted by the complainant that they had consulted with each other for the purpose of devising some means by which the rent could be reduced for the benefit of the equipment company, and also that after the transaction he had offered to the defendant to make a pot and divide the gains arising from the transaction, insisting, however, that there should be no division of the stock, which he must retain in his own name to enable him to perform his contract with reference to the rent. The proposition of the complainant, as he stated it, was, that the defendant might take bonds for his stock and turn it over, or account for the bonds which he had kept and retain the stock, or make a pot and divide all the gains flowing

from the deal.   This proposition was never accepted by the defendant.   The proposition as claimed by the complainant involved the gain, of every sort and description, to the parties under the contract, and defendant was greatly benefited, as a large stockholder in the equipment company, in the reduction of the rent, which amounted to a large sum of money for that corporation.   The defendant had retained a large amount of the unused bonds received from the trustee, which, however, are not involved in this litigation.   Complainant testified that he' made no agreement whatever with the defendant under which he became a party to the contract or interested in the deal, but that he explained to defendant that he could not be so interested; that he was acting for the corporation, and any attempt to acquire an interest on the other side of the contract would operate to make the transaction a fraud.   The defendant testified that before the contract was made there was an agreement between him and the complainant to divide the profits of the transaction equally.   Whether we would enforce such a contract as defendant alleges was made, or not, we do not think that the defendant furnished clear and satisfactory evidence of its existence.   Such a contract is one which the law does not approve, and one which would be set aside at the instance of stockholders.   The defendant is compelled to claim that the contract was really made with himself, as a partner of the complainant; that he was obtaining a private advantage not shared by the other stockholders, and that he was really acting on both sides of the transaction when the proposition was accepted by his vote.   There is certainly no presumption of such conduct on his part unless it is clearly proved.

It is insisted, however, that the complainant is contradicted by his own letters and by admissions that the defendant was jointly interested in the contract.   After the transaction was completed the complainant wrote to the defendant that whenever it suited their conveni-

ence they could get together and divide what was left, and it is contended that the offer to make a pot, giving to the defendant a share of the assets of the brake-beam company, could mean nothing except dividing the stock, because it is only stockholders who are entitled to the assets of a corporation upon settlement of its affairs. Whatever may have been meant by an offer to divide what was left, it did not mean a division of the shares of stock which the complainant insisted upon retaining. Furthermore, the proposition was not accepted by the defendant, and it is not the proposition nor agreement set up in his answer. If the defendant could claim anything by virtue of the subsequent proposition, it would only be by proving an acceptance of the proposition as made. There was testimony of witnesses, in a general way, that complainant said he and defendant were carrying the deal through; that they were both interested in it; that he could not carry it through without the defendant's aid; that when the deal was closed he and the defendant would own the stock and be the brake-beam company, and that the defendant was a great big man and great business man, and other like expressions. The fact was, that the two were carrying the deal through; that they were both interested in it, one as the contractor and the other as a large stockholder in the equipment company; that there would be a great benefit to defendant as a stockholder of the equipment company; that he was active in getting in the stock, and that if it was all gathered in by complainant except defendant's shares, they would be the company, in effect. There was no evidence of any definite statement or admission that there was such a contract or interest as claimed by the defendant. The parties were intimate friends, and the complainant said that it had always been his doctrine that they should divide every dollar they made as a result of any transaction, and he also indulged in many extravagant expressions of personal regard for the defendant;

but all such statements and expressions were clearly insufficient to establish an agreement that the defendant was to have one-half of the shares of stock of the brake-beam company.

We do not think that the contract alleged by defendant was proved, and we agree in the conclusion reached by the Appellate Court.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*