## Charlotte E. Bennett et al., Appellees, v. Minnie M. Woolsey, Appellant.

### Gen. No. 15,081.

APPEALS AND ERRORS—*what final and appealable order.* A decree in favor of the complainants on the merits and awarding an accounting is final and appealable before the account has been taken.

Bill for injunction. Appeal from the Superior Court of Cook county; the Hon. MARCUS KAVANAGH, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1910. Reversed and remanded with directions. Opinion filed April 7, 1911.

**Statement by the Court.** On October 9, 1902, the appellees, Charlotte E. Bennett and Horace C. Bennett, hereinafter called the complainants, executed a bill of sale to Minnie M. Woolsey, appellant, hereinafter called the defendant. The bill of sale was in the usual form, the consideration being "one dollar and other good consideration," and the property being described as follows, to wit:

"All our right, title and interest in and to the capital stock of The Credit Guide Company, being Thirteen Thousand Dollars ($13,000.00) in amount, and which is now in the possession of Masterson, Haft and Dandridge, attorneys at law, and is there pledged as security for a loan of Twelve Hundred Fifty Dollars $1,250.00), and also all our interest in and to the property of every kind and nature of said The Credit Guide Company; and also, we hereby sell and assign to said party of the second part any and all claims we may now have against said The Credit Guide Company. Said second party agrees to pay all the debts of said The Credit Guide Company."

On the same day certificates for 1,170 shares of the capital stock of The Credit Guide Company were issued to Mrs. Woolsey to take the place of a certificate of 690 shares which theretofore stood in the name of the complainant Charlotte E. Bennett, and 480 shares

which previously had stood in the name of Anne E. Warren but never had been delivered to her.

On October 9, 1902, the complainant Horace C. Bennett was the president of The Credit Guide Company, and the defendant was secretary.

On January 20, 1903, the complainants filed their bill asserting that they were the owners of 2490 shares of the capital stock of The Credit Guide Company, a corporation organized under the laws of Illinois, with a capital stock of $25,000, divided into 2,500 shares of $10 each; that on the said ninth day of October, 1902, The Credit Guide Company being in need of money, the complainant, Charlotte E. Bennett, authorized her husband, Horace C. Bennett, to enter into an agreement with the defendant, substantially as follows:

"Mrs. Woolsey is to, in the immediate future, advance or furnish enough money to The Credit Guide Company to pay all its present liabilities, and receive as security for its repayment the capital stock of said company, including the interest of Mrs. Bennett in thirteen hundred (1,300) shares pledged to Masterson, Haft & Dandridge to secure a loan of twelve hundred and fifty dollars ($1,250).

"In case the profits of the business, or Mr. and Mrs. Bennett shall repay such money so advanced, within two years, then Mrs. Woolsey is to reconvey the stock so pledged as security, and when the money so advanced is paid, Mrs. Woolsey has the option to purchase absolutely one-third of the stock for a sum not less than $2,000, nor more than $4,000."

The bill further alleged that under the agreement Mr. Bennett was to receive "in the meantime" a salary of $150 per month, and Mrs. Woolsey a salary of $100 per month; that on the said ninth day of October, 1902, the complainant, Horace C. Bennett, entered into an agreement with the defendant, substantially as above set forth, and that the complainant, Mrs. Bennett, pursuant to the agreement, assigned to the defendant, as security for any money that she might advance, pursuant to the agreement, 1170 shares of the capital stock of The Credit Guide Company, and exe-

cuted a bill of sale, the essential portions of which are set forth in the opening of this statement.

The bill further alleged that the defendant had paid but a small portion of the debts of the Company, though frequently requested to pay the others, and that the defendant seeks now to defraud the complainants out of 2,480 shares of stock of the company by claiming absolute ownership.

The bill prayed an injunction to restrain defendant from disposing of the stock; prayed that an accounting be had and the amount, if any, paid by the defendant on the debts of the company be fixed and determined.

The complainants in the bill offer, when such an amount should be ascertained, to pay the same to the defendant; prayed that the bill of sale before referred to be cancelled, and that the firm of Masterson, Haft & Dandridge be restrained from delivering the 1300 shares to the defendant or any other person.

The answer denies that the complainant, Charlotte E. Bennett, is the owner of 2490 shares; denies that the defendant ever entered into the contract, as set forth in the bill with the complainants, and asserts that the transfer of the stock certificates to her and of the bill of sale executed by the complainants were absolute; that on said October 9, 1902, the complainant, Horace C. Bennett, stated to the defendant that it was utterly impossible for him to continue the business of The Credit Guide Company, and if the defendant would place in the treasury of the Credit Guide Company sufficient moneys to meet its outstanding obligations and relieve him from various obligations of the Company on which he was individually liable as guarantor and otherwise, and save himself and his wife, Charlotte E. Bennett, from the disgrace of having the business of The Credit Guide Company pass into bankruptcy, that the complainants would assign and set over to the defendant absolutely all their right, title and interest in and to the capial stock of the Company, with the exception of 20 shares, which should be re-

tained by the complainants, and that thereupon they did set over by proper endorsement and delivery 1170 shares of the capital stock and executed the bill of sale before referred to. The answer further declares that on January 16th and 17th, 1903, she twice tendered to Masterson, Haft & Dandridge the amount due them and for which they were holding the stock as collateral, and demanded that they turn over the stock to her, but her offer was refused and she was informed by the said firm that the complainant, Charlotte E. Bennett, had served them with written notice not to deliver the stock to the defendant. She denied that she had paid but a small portion of the debts of the Company, but on the contrary stated that she had paid all the debts that were due and owing, and that she had placed in the treasury of the Company out of her own funds sufficient money to pay the debts of the Company, upon which the complainant, Horace C. Bennett, was personally liable.

In March, 1903, the defendant filed a cross-bill against the complainants, asserting her right to all of the stock of The Credit Guide Company, excepting 20 shares standing in the name of one Anne E. Warren, a sister of the complainant, Charlotte E. Bennett, which 20 shares of stock she alleged on information and belief to be the property of the complainant, Horace C. Bennett.

The cross-bill alleges that Mrs. Woolsey had fully complied with her agreement with the complainants, and that she stood ready to pay the note to Masterson, Haft & Dandridge. The cross-bill makes the members of the firm of Masterson, Haft & Dandridge defendants; prays that the cross-complainant may be adjudged and decreed to be the owner of the stock and the property in the bill of sale described, and that Masterson, Haft & Dandridge be decreed to cancel and surrender the note of The Credit Guide Company and deliver the certificates of stock to the cross-complainant.

Answers were filed to the cross-bill, the original bill

of complaint was amended and a supplemental bill of complaint was filed.  ·

Afterwards on March 9, 1905, an order was entered dismissing the suit as to the defendants Masterson, Haft & Dandridge, and on March 16, 1908, a decree was entered in favor of the complainants, adjudging that the above bill of sale before referred to is a mortgage or pledge; that an accounting be had between the complainants and the defendant, and referring the cause to a master in chancery to make the accounting.

The defendant prayed an appeal to this court, which was allowed. An order was entered in this court affirming the decree but on motion of the appellant a rehearing was granted. At the time of making the motion for the rehearing, a motion was made by the appellant to dismiss the appeal, to which objections were made by the appellees, the determination of the motion being reserved to final hearing of the case.

WILLIAM J. CANDLISH, GLENNON, CARY, WALKER & HOWE and NEWMAN, NORTHRUP, LEVINSON & BECKER, for appellant.

I. T. GREENACRE and FRED D. BANGS, for appellees.

MR. JUSTICE CLARK delivered the opinion of the court.

The first matter to be decided is the motion of the appellant for a dismissal of the appeal. This motion is objected to by the appellees, and after having given the matter full consideration we have reached the conclusion that the decree is a final order, and therefore appealable. (Stahl v. Stahl, 220 Ill. 188.)

We come now to consider the case on its merits. The testimony discloses that on October 9, 1902, and for some time prior thereto The Credit Guide Company, the capital stock of which was almost entirely owned and controlled by the complainants, was in a desperate financial condition. Mr. Bennett had built up a considerable business for his company, as a mer-

cantile and collection agency, but the condition of the company had reached such a pass that he was obliged to borrow money at exorbitant rates of interest. He had personally guaranteed, as he states in his testimony, practically all of the obligations of the company. He had been advised by friends to seek shelter in the bankruptcy court. His standing as an honest business man had always been good, and he naturally shrank from taking an action which he felt would place him in disgrace in the business world. He had hopes that he could weather the storm. He had on several occasions negotiated with the defendant, who had been associated with him in business for some years as a clerk, bookkeeper and manager of the office, for the purchase of an interest in the business, but they came to no understanding until in October, 1902. On October 6th, 7th or 8th, the complainant, Horace C. Bennett, says that he told Mrs. Woolsey that he had tried to get the Dandridge note, so-called, extended, but that he had failed. He further testified that she had on the day previous agreed to furnish the company some money to take up the note, if he would secure her. He said he wrote on some telegraph blanks, at Mrs. Woolsey's request, what his proposition was, and that the last he saw of them they were in Mrs. Woolsey's possession. He testified that there was written upon these blanks in substance that her salary was to be increased to $100 per month; that he (Bennett) was not to draw to exceed $1,800 per year; that whatever money Mrs. Woolsey advanced was to be paid back within two years, and if during that time she desired to purchase an interest in the business she could do so at not less than $2,000 nor more than $4,000 for one-third interest. This memorandum was not signed by him. He made out a bill of sale. This was not satisfactory to Mrs. Woolsey, and later she had one drawn by her attorney, which was signed by the complainants and is the one heretofore referred to.

Mr. Bennett is an attorney and has been practicing,

as we understand it, more or less for many years in Chicago. The certificate of stock which stood in his wife's name, he procured to be assigned by her to Mrs. Woolsey. He and his wife, the co-complainant, signed the bill of sale which had been prepared by Mrs. Woolsey's attorney covering their interest in the other shares of stock. The transfer of the certificate of shares of stock appeared to have been made in the usual way. The only unusual thing in the bill of sale which might suggest that it was not intended to be absolute in its nature was the language—"said second party agrees to pay all the debts of said The Credit Guide Company." It seems to us that the fact that Mr. Bennett was a guarantor, as he testifies, of practically all of the indebtedness of The Credit Guide Company is a sufficient reason why he should insist that these words last quoted be incorporated in the bill of sale. He was anxious, naturally, that the indebtedness of the company, so far as it was guaranteed by him, should be fully paid, so that if at a later date the company should become bankrupt he could not be personally held on such guarantees.

There is no claim made by the complainants that the defendant gave to them anything in writing to show that the bill of sale was not absolute, nor is there any claim made that the complainants agreed in writing to indemnify the defendant for any money that she might advance to the Credit Company, and no mention of interest was made. The rule is well established, that in order to overcome the presumption arising from a written instrument, like a bill of sale, absolute in its nature, the evidence must be full, clear and satisfactory to the mind of the court. (Leigh v. Laughlin, 211 Ill. 192; Burgett v. Osborne, 172 Ill. 227.)

As said by the Supreme Court of the United States in Howland v. Blake, 97 U. S. 624—"In each case the burden rests upon the moving party to overcome the strong presumption arising from the terms of a written instrument. If the proofs are doubtful and un-

satisfactory, if there is a failure to overcome this presumption by testimony entirely plain and convincing, beyond reasonable controversy, the writing will be held to express correctly the intention of the parties. A judgment of the court, a deliberate deed or writing are of too much solemnity to be brushed away by loose and inconclusive evidence.'' Citing Story Eq. Jur., sec. 152.

In the very recent case of Stubbings et al v. Stubbings et al., 248 Ill. 406, our own Supreme Court had occasion to consider the kind of oral testimony required to authorize the court to set aside a written instrument absolute in its terms, and held ''To authorize the court to impress a trust upon property upon oral testimony it is essential, even though the Statute of Frauds be not pleaded, that the facts be established by clear and convincing proof, and unless the testimony is of that character the court is justified in denying the relief.''

The oral agreement claimed by the complainants to have been made is of itself very uncertain. By its terms the defendant was to have the option of buying within two years, *at not less than $2,000 and not more than $4,000, a one-third interest in the company.*

It clearly appears from the evidence that the defendant had what little money she possessed well invested. It is hardly natural to suppose that the defendant, who appears to have good business capacity, would loan this money to the corporation (admittedly in desperate financial condition) without interest and without any agreement on the part of the complainants to reimburse her, and with only the dubious expectation of receiving at any time within two years one-third of the capital stock of the company, on the payment by her of an indefinite amount, not less than $2,000 and not more than $4,000. She showed her dissatisfaction with the form of the bill of sale prepared by Mr. Bennett, and with him went to the office of another lawyer, who prepared the bill of sale now sought to be set

aside.   She testifies that nothing was said tending to indicate that it was to be otherwise than an absolute sale of the interest in the stock.

Is it not reasonable to suppose that Mr. Bennett, himself a lawyer, would have required something in writing from Mrs. Woolsey to evidence the fact that the assignments of the shares of stock and the bill of sale, all absolute on their face, were not intended to be absolute but merely security for a debt?

The solicitors for the complainants have urged that it is a significant fact that the defendant, who kept the cash book of the Credit Company, should have placed upon the book such entries as this:

"Oct. 9-2.

This money was put in the Credit Guide Co. by M. M. Woolsey as per agreement with H. C. Bennett & Credit Guide Co.                                    $515.00."

In so far as Mrs. Woolsey advanced money to the company, it was perfectly proper that the books of the company should show a credit to her, and it was in exact consonance with the language of the bill of sale, in which she agreed that the debts of the corporation should be met when due, and that thereby Mr. Bennett be relieved from his guarantee of such debts.

In our opinion, the decree should be reversed and the case remanded with directions to the Superior Court to enter a decree dismissing the original bill for want of equity, and decreeing upon the cross-bill the relief therein prayed for, declaring that Mrs. Woolsey is the absolute owner of the stock assigned to her, including the stock in the hands of Masterson, Haft & Dandridge, upon payment to them of the indebtedness, for which the stock is held as security, with interest thereon up to the date of the tender.

*Reversed and remanded with directions.*