## Henry D. Laughlin v. Edward B. Leigh.

### Gen. No. 10,643.

1. RESULTING TRUST—*what essential to establish.* To overcome the presumption which arises from a written contract and to establish by parol an interest in the nature of a resulting trust, the evidence must

be clear and satisfactory to the mind of the court, showing that at the moment the writing was executed the trust arose.

2. CESTUI QUE TRUST—*interest of, defined.* The interest of a *cestui que* trust is an equitable estate in the land or other thing of which the legal title is vested in the trustee.

BAKER, J., dissenting.

Bill to enforce trust. Appeal from the Circuit Court of Cook County; the Hon. OLIVER H. HORTON, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1902. Reversed and remanded, with directions. Opinion filed February 13, 1904.

**Statement by the Court.** Appellant filed his bill of complaint in the Circuit Court alleging that he is the owner of 35,425 shares of the capital stock of the National Hollow Brake Beam Company, an Illinois corporation, having a capital stock of $600,000, divided into 60,000 shares, of which corporation the defendant, appellee herein, is treasurer; that the number of shares outstanding is now about 45,513. Appellant states that prior to January, 1899, the American Trust & Savings Bank, under the terms of a certain trust, acquired for the account of the complainant 24,798 shares of the stock of said corporation, which were transferred on the books of the company to the appellant; that the certificates representing these shares were endorsed by him in blank and re-deposited with said American Trust & Savings Bank, for performance by said bank of said trust, of which appellant was one beneficiary, and the Chicago Railway Equipment Company, a corporation, was the other, and that January 28, 1899, appellant became entitled by the terms of the trust to receive from said bank the certificates representing said shares of stock.

Appellant states that January 28, 1899, the defendant had become and was the agent of appellant, authorized by virtue of a power of attorney from appellant, to receive from the bank such shares of stock whenever appellant became entitled thereto; that pursuant to authority from appellant conferred by said power of attorney, defendant applied for and as agent of appellant obtained from said bank the possession of said certificates of stock so belonging

to appellant, and receipted therefor in appellant's name; that, thereafter, as agent of appellant, defendant retained possession of said certificates of stock by appellant's permission, solely for safe keeping until January, 1900, when without knowledge, authority or consent of appellant, the defendant fraudulently, wrongfully and unlawfully inserted his own name in the blank powers of attorney signed by appellant on the backs of two of said certificates, and transferred to himself upon the books of said corporation, the shares of stock represented thereby; that defendant then issued to himself, and in his own name, a new certificate numbered 1,236, representing 13,111 shares of said capital stock, which said certificate defendant still retains; and that appellant did not become aware of such wrongful transfers by appellee until about December 28, 1900.

It is further alleged that defendant received in January, 1899, possession of other shares for account of appellant, from persons other than said bank, approximating 8,244 shares; that defendant, appellee herein, is the owner of about 9,000 shares of the stock of said company, and the fraudulent transfer by appellee to himself of 1,311 shares belonging to complainant, was made for the fraudulent and unlawful purpose of acquiring for himself control and ownership of the said shares and voting them at the next meeting of the stockholders of said company. Appellant prays for an injunction, and that the defendant be directed to deliver and cause to be transferred to appellant all of said shares of stock and that appellant be adjudged and decreed to be the absolute owner thereof, and for general relief. An injunction issued.

Appellee's answer admits the transfer of the shares of stock referred to, and avers that while defendant's name did not appear in the papers and documents evidencing the trust referred to, he was nevertheless beneficially and actually interested equally with said complainant; and that while complainant was nominally, under the terms of said trust, entitled to receive the certificates from the bank, defendant was equally interested in said certificates of stock

with said complainant. The answer is lengthy and sets up appellee's defense with considerable detail, which need not be here repeated.

It appears that appellant is and was president of the National Hollow Brake Beam Company and a stockholder in the Chicago Railway Equipment Company, of which appellee was and is general manager and director. The last named company was and is lessee of the manufacturing plant of said National Hollow Brake Beam Company, to which it was in 1896 paying a large so-called rent, the original amount of the rent having been fixed by a written lease at $975,000, payable in equal semi-annual installments of $32,500 each, for the term of fifteen years, from January 1, 1893. There was, however, an arrangement, not material in this controversy, whereby the stockholders of the lessor were to receive no more than par for their stock, the so-called rent being, it is said, equivalent to purchase money for certain assets. Appellee avers that he and appellant, being large stockholders in the National Hollow Brake Beam Company (the lessor), considered that if a plan could be devised whereby the stockholders of that company "except defendant and complainant," could be paid full par value of their stock at once before the expiration of the term provided in the lease, whereby the fixed charges of the lessee, the Chicago Railway Equipment Company, could be reduced, it would be greatly to the interest of the stockholders of both of the companies, lessor and lessee; that after much figuring and many conferences appellant and appellee together evolved the plan whereby they, acting in co-operation, jointly, would be able to purchase all the outstanding stock of said lessor, the National Hollow Brake Beam Company, not already held by them, enabling the other stockholders to obtain par for their stock without further delay, and they could then effect a reduction of the rent and fixed charges of the lessee, the Chicago Railway Equipment Company; that it was then agreed between complainant and defendant that if said plan was carried out they should jointly bear the burdens and share the benefits, and after their individual loans and holdings in

Laughlin v. Leigh.

said National Hollow Brake Beam Company were equalized, they were to be the owners of the stock and assets of the said National Hollow Brake Beam Company, share and share alike.   Appellee avers that he and appellant considered that the execution of the plan might require more money than appellee and appellant could procure, unless a large number of the stockholders would take bonds instead of cash, and that appellee made the arrangement with the American Trust and Savings Bank to accept the trust necessary to carry out the plan, and to advance the money to the amount of $80,000, if necessary.   Appellant denies that there was any agreement whereby the two were to jointly bear the burdens and share the benefits, or to be, jointly, owners of the stock and assets of the National Hollow Brake Beam Company, share and share alike.   He states that he explained to appellee that this was impossible, in view of appellee's relations to the Equipment Company, and that no such arrangement would be made; and that appellee so understood when he, being interested as a stockholder and as manager of the Equipment Company whose fixed charges were to be reduced, volunteered to act as appellant's agent and receive the bonds and stock coming to appellant in carrying out the arrangement.

Appellant drew up and presented a proposition in writing to a shareholders' meeting of the Railway Equipment Company, which was accepted by said company on or about May 18, 1898, appellee voting therefor as a director of that company.   Appellant also presented a written proposition to a shareholders' meeting of the National Hollow Brake Beam Company, which was accepted by said latter company on or about September 20, 1898.   The trust was accepted by the bank, which later requested from appellant some written evidence of appellee's authority to act for appellant, and appellant wrote and delivered to appellee a letter, which is as follows:

" CHICAGO, Dec. 3, 1898.

THE AMERICAN TRUST AND SAVINGS BANK, LaSalle & Madison Sts., City.

GENTLEMEN:—Mr. E. B. Leigh is fully authorized to do

any and everything concerning or involving any matter relating to the trust now being executed by you for me, or relating to any other matter, business or thing whatsoever, and in which you may be concerned or interested, to the same extent and in the same way that I could myself do it if personally present. . Whatever he does is authorized by me, and will be ratified regardless of what it may be.

I give you this because I understand your Mr. Kopf has intimated to me that some written evidence of his authority to represent me is for some reason desirable.

Yours very truly,

HENRY D. LAUGHLIN."

Appellee delivered said letter to the bank, and whatever business relating to this transaction was conducted by appellee, was done in the name of appellant.

The cause was referred to a master to take proofs and report upon the issues of law and fact involved, who reported, first, that appellant and appellee were not partners in the transaction in controversy, but that after the transaction was substantially completed, appellant in recognition of appellee's efforts in his behalf, voluntarily promised to divide with appellee the assets, but not the stock of the National Hollow Brake Beam Company; second, that appellee's claim that he is entitled to a division of the certificates of stock in the National Hollow Brake Beam Company received in appellant's name in the rent readjustment transaction, is not supported by the proofs; third, that the certificates in controversy were received and held by appellee in a fiduciary capacity only, and that he had no lawful power or authority to transfer the same or any part thereof to himself; fourth, that the consummation of the trust transaction was largely to the advantage of appellee on account of his ownership of stock in the Chicago Equipment Company, and that this interest was a sufficient reason and inducement for his voluntary aid to appellant in carrying out the plan. The master concludes therefore that the equities are with appellant, and that the latter is entitled to the relief sought by him.

To this report, one hundred thirty-three exceptions were filed. Upon hearing, the Circuit Court dissolved the injunction and dismissed the bill.

SHOPE, MATHIS, ZANE & WEBER, for appellant.

JOHN P. AHRENS and DAVID S. GEER, for appellee; A. M. PENCE, of counsel.

MR. PRESIDING JUSTICE FREEMAN delivered the opinion of the court.

The evidence in this case is so voluminous and the testimony of the parties themselves so irreconcilable, that its proper consideration has imposed a very considerable amount of labor on the court. The counsel have presented their views in briefs and arguments containing between four and five hundred pages. Nevertheless, the contention involves the determination of a single question of fact— whether appellee, who acted ostensibly as appellant's agent in attending to the details involved in carrying out a written contract made wholly by and in the name of appellant, was in fact equally and jointly interested, by virtue of a private understanding and agreement, as a co-principal, entitled to share equally in the proceeds, and equally bound by liabilities.

Appellant claims in substance that appellee has taken advantage of his position as confidential agent and trusted friend, having possession for safe keeping of certificates of stock in the National Hollow Brake Beam Company belonging solely to appellant and standing in appellant's name, which for the purpose of securing the trustee pending the completion of a trust, appellant had endorsed in blank; and that acting secretly without appellant's knowledge and without right, appellee has sought to appropriate half of the stock coming into his hands as such agent, to his (appellee's) own use and benefit under a false claim of equal ownership. Appellee, on the other hand, asserts that while the shares of stock were gathered in by appellant and himself, and placed in the hands of the American Trust and Savings Bank as trustee in the name of appellant, the agreement was that the stock was received and held for the joint benefit of both parties, share and share alike. Whether or not there was such an agreement is, as stated by appellee's

counsel, "substantially the sole controversy" to be here determined. If there was such an agreement binding upon the parties, then appellee was entitled to the 13,111 shares of the capital stock of the National Hollow Brake Beam Company which he claims.

The evidence is documentary and oral. The testimony of the principal parties, who alone are able to testify with positive knowledge of the agreement between them, if there was any, is so absolutely conflicting and irreconcilable, as to deprive it of material value, except so far as it may be corroborated by written instruments, or by other witnesses. The master reached one conclusion and the Circuit Court another. The duty is devolved on us of sifting out of this mass of evidence such grains of truth as we are able to discover.

First, as to the documentary evidence: The controversy grows out of a certain contract made in the name of appellant with a corporation known as the Chicago Equipment Company. This company held a so-called lease from another corporation, the National Hollow Brake Beam Company, to which the former company was paying a large annual rental. Appellant and appellee were owners respectively of considerable stock in both companies. Appellant is the president of the National Hollow Brake Beam Company, and appellee is its secretary and treasurer. Appellee is the general manager and a director of the Chicago Railway Equipment Company and appellant is one of its stockholders and was its vice-president. The lease from the National Hollow Brake Beam Company to the Chicago Railway Equipment Company conveyed the patents, good will and business of the former company to the latter. The so-called rental which it is said was a method of paying the purchase price, was fixed at $975,000, payable in half yearly installments at the rate of $65,000 a year for fifteen years. This annual payment was regarded as a heavy burden by the lessee company and a rent readjustment had been a matter of consideration and negotiation from time to time for about three years before the contract was made, out of

which the present controversy arose.    Finally, March 16, 1898, appellant in his own name submitted a written proposition to the Equipment Company and its stockholders, which was accepted May 18 of that year.    By the terms of that proposition which became the contract between appellant and the Equipment Company, appellant undertook over his own signature and in his own name to procure a reduction of the rent payable under the lease by the Chicago Railway Equipment Company to the National Hollow Brake Beam Company, from $65,000 to $5,000 per annum; and, in return, the Equipment Company agreed to pay to appellant $100,000 and to execute and deliver to him its interest-bearing, negotiable, secured, coupon bonds to the amount of $300,000 more.    The plan contemplated the acquisition by appellant of the outstanding stock of the lessor, National Hollow Brake Beam Company, paying to the stockholders in such company the full par value of their stock, which was all they were entitled to get for it by the terms of the lease, and paying them this full par value at once upon their transferring it to appellant, instead of obliging them to wait until the end of the fifteen year term.    Accordingly, July 19, 1898, appellant made a proposition in writing to the National Hollow Brake Beam Company, that if it would reduce the rent of the Equipment Company as proposed, he would pay to each of its stockholders the full par value of his stock in cash or Equipment Company bonds.    This proposition was accepted.    All that remained therefore was to receive and pay for the stock of the Brake Beam Company, and to obtain the payment in money and bonds to be made by the Equipment Company. To secure compliance with the contract and protect both parties, the American Trust and Savings Bank was designated as trustee to receive and hold the Equipment Company bonds and deliver them to appellant upon his depositing with said bank certificates assigned in blank, but not transferred to the bank's name, representing an amount of the capital stock of the lessor, National Hollow Brake Beam Company, equal to the bonds so withdrawn.    Appellant,

however, by the contract expressly reserved to himself the right at all meetings of the shareholders of said National Hollow Brake Beam Company, under any and all circumstances, to vote all of the shares so deposited, unless or until through his default, his legal or equitable title to them should have passed from him absolutely and forever. In addition to these provisions of the contract there are others, which are, likewise, apparently personal to appellant. One of these relates to the title to stock then held by appellant in the National Hollow Brake Beam Company, and another refers to obligations under a former contract in which so far as appears appellee had no part. Appellant also obligates himself in case the National Hollow Brake Beam Company does not formally reduce the rental as appellant undertakes to have done, he will himself pay the difference between the $65,000 and $5,000 per annum and relieve the Equipment Company therefrom. The contract bears upon its face the appearance of having been made by appellant by and for himself alone, and there is nothing in its terms or subject-matter which can be construed as suggesting an interest on the part of appellee or any third party.

It appears that appellee was present at the meetings of the stockholders of both the Equipment Company and the Brake Beam Company when appellant's propositions were accepted by each of said companies respectively, and that he voted his stock in each case in favor of their acceptance, while the shares owned by appellant were not voted. If he was then by agreement with appellant jointly interested with the latter in the contracts, his interest was not disclosed, and he voted and acted as one of the stockholders, and as manager and secretary to some extent represented the corporations, the interests of which it was his duty to protect in negotiations of such a character, and to disclose his adverse interest if he then thought he had any. The first time that appellee appears in the transaction as acting for appellant, is in connection with the trust executed by the American Trust and Savings Bank. Appellant's explanation of the manner in which appellee came to act as

his agent in that matter is that appellee, as manager of the Equipment Company charged with carrying out its part of the contract, had become worried about the delay in getting out the bonds given by said company; that he came to appellant, when the bonds were ready for the bank, and said that if appellant would let him, he would attend to the whole matter for appellant, provided everything was allowed to go through his (appellee's) hands. Appellant says he replied "Much obliged! I will just take you up." He states that appellee "had been self-appointed trustee for more than ten years; had handled my securities and made a point, as he expressed it, to get hold of them to keep me from letting my friends get them; that he could handle my affairs better than I could myself; and I thought so myself, and I thought them safer in Mr. Leigh's hands than mine."

The rent reduction was duly effected by January, 1899. At that time 24,798 shares of the outstanding stock of the National Hollow Brake Beam Company had been transferred to appellant upon the books of the company and new certificates therefor had been issued by appellee as secretary in the name of appellant and deposited with the bank as trustee. December 3, 1899, appellant, at the request of the bank communicated through appellee, had written a formal letter stating that appellee was authorized to act for appellant in any matters relating to the trust. This was delivered to the bank by appellee.

It appears therefore that up to this time, whatever may have been the private understanding or agreement between them, appellee was holding himself out to the corporations involved as not interested in the contract, and to the world, as appellant's agent. This is the record evidence, and according to that evidence appellant alone assumed all the burdens and obligation of the contracts. The receipts which appellee gave at the bank for stocks and bonds received in connection with the trust were signed by him, "Henry D. Laughlin by E. B. Leigh." The master finds from documentary evidence, that during the year 1899, before the rupture of friendly relations between the parties over a

matter foreign to the matter in hand, but after appellant's said contracts had been substantially complied with, that four dividends were declared and paid by the National Hollow Brake Beam Company on its stock, and the whole amount of such dividends paid on the stock now claimed by appellee were received by him for and credited by him to appellant as the one entitled to receive them. We are unable to discover any reason why appellee should have credited appellant with all these dividends at that time if he then regarded himself as the owner of half of them.

Appellee's claim—that, when in March, 1898, appellant made his written proposition out of which the rent readjustment contract grew, there was an express understanding and agreement between the two that while for convenience the proposition was made and the contract entered into in appellant's name, the latter nevertheless represented appellee as well as himself, and they were equally and jointly interested—is based upon his own oral testimony, upon alleged previous relations between the parties, upon statements of account made by appellee which it is claimed were acquiesced in by appellant, upon alleged corroborative testimony of other parties, and upon expressions in letters written by appellant. It is argued that the parties had never been in the habit of putting their numerous agreements in writing, and in March, 1900, appellant writes to appellee that he is ready to " begin the ' new practice ' as suggested by you of reducing everything to writing hereafter." The absence of an agreement in writing, therefore, it is said, does not militate against appellee's claim that an agreement did in fact exist. Nor on the other hand does it tend to prove the existence of such agreement. It is conceded that appellant had been engaged in deals in which appellee had no interest, as for example, the Kewaunee Company and the American Brake Beam Company.

Appellee's statement is that in 1895 appellant said to him that the stockholders of the Equipment Company were desirous of reducing their rent, and that he (appellant) said, " You and I can get together and devise a plan by which

this can be accomplished and this rent reduced.    I think a proposition can be made that will be entirely fair to the Chicago Railway Equipment Company and at the same time a fair proposition to the National Hollow Brake Beam Company's stockholders, and that you and I can make something for ourselves."    Appellee goes on to say that the two did a great deal of figuring, that appellant said he would require appellee's help, " and that we were to jointly take hold of this rent readjustment and share benefits and burdens jointly, providing such moneys as might be needed."    That the scheme was likely to be beneficial to appellee as a stockholder of the Equipment Company, was the expectation of both parties.    Appellee's interest in that company was much larger than that of the appellant, and to relieve the company from the large rent payment was regarded as desirable by its stockholders, in the expectation that the result would be to largely enhance the value of the stock.    Assuming that appellee is correct in his version of these conversations, which appellant however expressly denies, the fact remains that when the proposition came to be made it was appellant alone who in fact assumed the burdens and obligations of the contract.

The alleged oral agreement is claimed by appellee's counsel to be corroborated by a memorandum of figures introduced in evidence and made at the time.    This tends to show that the two were figuring over the situation together, which, considering that appellee expected to make money out of the enhanced value of his Equipment Company stock and that the scheme, if carried out, was likely to be of great advantage to the Equipment Company, appears to have been a very natural thing to do independently of any oral agreement, such as is claimed.    The fact that they were thus figuring together does not, so far as we can perceive, throw any light on the question of the existence of such oral agreement.    The same is true of other memoranda to which our attention is called.    Sundry expressions in letters and telegrams passing between the parties are said to furnish additional corroborative evidence, but they are vague and in-

definite, consistent, generally, with either theory. Appellee did sign with appellant a note for $20,000, money borrowed from the bank to be used in gathering in the stock. This was the only money borrowed from the bank for the purpose, and it is claimed, in behalf of appellant, that appellee was in effect a voluntary guarantor, not a joint maker. However that may be, the relations of the parties were such at that time, and each apparently had helped the other financially to such an extent, that the note referred to is, in view of the course of dealings between them, consistent with either theory of the case, and is of no particular value as evidence for either party. Appellee was reimbursed out of the trust fund for all expenditures. There is also an expression in a letter written by appellant in which he asks for information whether appellee has not "clipped and collected the following Chicago Railway Equipment coupons: 50 series K (my half) due December, '99." It is argued that this expression " my half" shows that appellant was claiming only a half of the bonds referred to. Without further explanation, it is impossible for any one but the parties themselves to determine what bearing these words have, if any, on the controversy, or what they refer to. Appellant claims, and the figures are susceptible of the explanation, that in fact the bonds received pursuant to appellant's contract were not equally divided, but that appellee took only the bonds which corresponded to the par value of his stock in the National Hollow Brake Beam Company, to which bonds he was entitled in exchange for his stock had he turned it over to appellant as he was expected to do, and that appellant took the rest himself. If this view is correct, it tends to show that appellee did not at that time claim a half interest in these bonds, which were a part of the proceeds of the rent readjustment transaction.

It is conceded by appellant that he had offered to "pot and divide" with appellee. He states that he said to appellee, "You must put in your gains with me and we will divide them into two equal parts; but a division simply of

Laughlin v. Leigh.

my gains from either of the deals is no pot; it is a one-sided, jug-handled affair, and that I will not do; but in this division if we make one, which must be, if at all, a purely voluntary thing on my part, and in both cases will so largely benefit you that I guess you won't refuse to take it." Appellant says that this proposition was never accepted by appellee, and was a purely voluntary promise which afterwards, on discovering appellee's alleged misconduct toward him, he has withdrawn. He states that he did promise to divide certain assets, but not the stock in controversy. Appellee, as has been said, denies absolutely appellant's version in every essential respect.

This contradiction compels us to exclude from consideration most of the testimony given by the parties themselves. There is some further correspondence which, it is claimed, substantiates appellee's claim. January 15, 1900, appellant wrote appellee, enclosing four certificates obtained from one Nesbitt covering 1,325 shares of National Hollow Brake Beam Company stock " for transfer on the books of the company." In that letter he said, " This I believe gathers in all the National Hollow Brake Beam stock, and puts the company in such a position that you and I can, whenever it suits our convenience, get together and divide what is left. This I am ready to do whenever your pressing engagements are over with and you care to take it up." Just what was to be divided, the documentary evidence does not further disclose. Appellant claims that it referred to the proposed " pot," and appellee that it referred alone to the rent readjustment matter.

February 1, 1900, appellee rendered to appellant a statement of account of the transactions under the trust and otherwise, which is referred to in the evidence as " sheet N." It is headed, " Rent Re-Adjustment, ac. (N. H. B. B. Co.) Joint ac. H. D. Laughlin and E. B. Leigh." It apparently includes other transactions besides the rent readjustment matter, and shows an alleged " Bal. to Cr. Re-Ad. ac. 3275.66, ½ due to H. D. L. 1637.83." March 15 following, appellant writes, referring apparently to statement

" N," that he had made a mistake which he wished to correct: "You are entitled to one-half of these moneys, and become so when you assume one-half of the debt;" and subsequently he writes with reference to certain items and concludes: "This comes so near marking your statement of the account accurately correct, it seems to me we can so consider it, and I suggest that we do so." What debt is here referred to, is not explained. The statement " N " refers to receipts and disbursements by appellee in the rent adjustment matter, but throws no satisfactory light upon the claim of appellee that he was by prior agreement jointly interested with appellant in the latter's contract and the stock in controversy.

The master finds, and the finding is justified by the evidence, that after differences had arisen between the parties over what is known as " the side bearing and stock adjuster matter " appellee undertook to write up the books of the "National Hollow Brake Beam Company," of which he was still secretary and treasurer, dating back certain entries, and opening also an account which he calls " The Laughlin Trust account." Of course, these entries have no evidential value.

There is testimony of outside parties which, it is claimed, is corroborative of appellee's version of the controversy. These witnesses are a Mr. Walker, assistant secretary of the Equipment Company, Mr. Shaw, vice-president, Mr. Kopf, assistant secretary, and Mr. Chapman, cashier of the bank which conducted the transaction as trustee, Mr. Burkhardt, the president, Mr. Pungs and Mr. Bishop, directors of the Equipment Company, Mr. Furness, brother-in-law, and Mr. Leigh, a brother of the defendant. When this testimony is examined, it is found to contain statements alleged to have been made by appellant, most of which fall short of admissions that the parties were jointly interested in the rent readjustment, as appellee claims. Most of, them are ambiguous, susceptible of a different interpretation, the witness is not sure by whom the statements were made, or they were made by appellee. For example, testimony that

Laughlin v. Leigh.

appellant said he could not carry the deal through without appellee's aid, that they were both interested in it, is consistent with the kind of interest appellee had as a large stockholder in the Equipment Company. The testimony of the officials of the bank fails to show admissions by appellant or statements in his presence that the two were jointly interested. Mr. Kopf states that he " can't say the words ' joint contract' were used," and, in general, that he can't say what particular words were used, though the impression on his mind was that the contract was in appellant's name for convenience. Yet the bank, by Mr. Kopf, required appellee to obtain from appellant written authorization to act for the latter in that transaction. The testimony of Mr. Pungs who, it is claimed, was on bad terms with appellant, is contradicted by Mr. Kern.

We are unable to regard the testimony as sufficiently corroborative of appellee's contention that an agreement existed, by virtue of which he was jointly interested in the deal with appellant. To overcome the presumption arising from the written contract in evidence and to establish an interest in the nature of a resulting trust by parol, the evidence must be, as is said in Francis v. Rhoades, 146 Ill. 635–651, full, clear and satisfactory to the mind of the court, showing that at the moment the contract was made, the trust arose. All the authorities agree that parol evidence to establish such a trust must be of clear and convincing character, sufficient to satisfy the mind of the chancellor that the title was taken by the grantee under circumstances, such that the trust at once resulted. To the same effect is what is said in Corder v. Corder, 124 Ill. 229–231, where it is said that the object of the rule, in accordance with which " the evidence to sustain a resulting trust must be very clear, and is always received with great caution," is " to afford stability to the legal title to real estate." See also authorities cited in the dissenting opinion in Towle v. Wadsworth, 147 Ill. 80–99; also Strong v. Messinger, 148 Ill. 431–434, and Pomeroy's Equity Jurisprudence, sec. 1040. This rule is, however, applied generally where, as here, the testi-

mony of written instruments is assailed by parol proof of
an agreement contrary to the writing. The interest of the
*cestui que* trust is an equitable estate in the land or other
thing of which the legal title is vested in the trustee. 2
Pomeroy's Equity Jurisprudence, sec. 1043. The doctrine
stated in Maxwell Land Grant case, 121 U. S. 365–381,
where it is said that relief will be granted in cases of writ-
ten instruments only where there is a plain mistake clearly
made out by satisfactory proofs, in the most clear and de-
cided manner and to the entire satisfaction of the court, is
applicable in other ways as well as where it is proposed to
correct a written instrument for fraud or mistake. In How-
land v. Blake, 97 U. S. 624, it is stated that the case may be
decided upon a principle governing classes of cases of the
same nature, as where a written instrument is sought to
be reformed upon the ground that it does not correctly set
forth the intention of the parties, or where by a subse-
quent parol agreement it is claimed a party as a mortgagor
has surrendered his rights. In such cases it is said (p. 626),
" the burden rests upon the moving party of overcoming the
strong presumption arising from the terms of a written in-
strument. If the proofs are doubtful and unsatisfactory, if
there is a failure to overcome this presumption by testi-
mony entirely plain and convincing beyond reasonable con-
troversy, the writing will be held to express correctly the
intention of the parties." It was concluded in that case, as
we are compelled to conclude in this case, that there was
" undoubtedly, evidence produced by the complainant (in
this case defendant) to sustain his claim, but after a careful
perusal of it, we are by no means satisfied that it is of the
character and extent required by the principles above laid
down."

It was the view of the master that if there was a con-
tract such as appellee claims, it was made in violation of
appellee's duty to the Equipment Company for which, as
director and manager, he was acting in a fiduciary capacity
and whose interest he was bound to protect against appel-
lant; that if appellee had a secret contract or understand-

Laughlin v. Leigh.

ing giving him an interest on the side of appellant in the transaction, he was violating his trust, and such secret agreement would, if it existed, be illegal and of a character such as courts will not enforce. The effect of the alleged agreement would be to give appellee a private advantage not shared by the other stockholders. The testimony of Pungs above referred to shows that he regarded the deal as one in which he would have liked· to have an interest. Appellee was thus, if his version be accepted, given a special inducement to "disregard his duties to other members of the corporation who had a right to demand his disinterested action." Guernsey v. Cook, 120 Mass. 501–502. A contract of this character will be treated as absolutely void, and contrary to public policy. See Bestor v. Wathen, 60 Ill. 138; Linder v. Carpenter, 62 Ill. 309; Tobey v. Robinson, 99 Ill. 222; West v. Camden, 135 U. S. 507; Fuller v. Dame, 18 Pick. 472. We need not, however, consider this contention, in view of the conclusion we have reached, that the proofs do not sufficiently sustain appellee's claim that an agreement existed whereby he was the owner of a half interest in the contracts in controversy.

We do not deem it necessary to extend our consideration of the controverted questions, nor can we take up in further detail the many disputed matters of fact. It must suffice to say that the conclusion stated is the result of a careful consideration of the testimony, and of the arguments presented.

It was, in any event, erroneous to dismiss the bill. Appellant would be clearly entitled to have returned to him the stock in the hands of appellee which it is conceded belongs to him, and which appellee admits he is retaining in his hands without claim of right.

For the reasons indicated, the decree of the Circuit Court is reversed and the cause will be remanded to that court with directions to grant appellant the specific relief prayed for in his bill.

*Reversed and remanded, with directions.*

MR. JUSTICE BAKER, dissenting.

REPORTERS' NOTE. In the preceding case the question was involved as to whether a certain contract was void as against public policy in that an official of a corporation was secretly given an interest in a transaction in which he was at the time representing the corporation in his official capacity. The court did not deem it necessary to decide the question, but in the opinion will be found valuable authorities upon the point.