**Chicago Railway Equipment Company, Appellee, v. National Hollow Brake Beam Company.**

**On Appeal of Louis L. Woods, Appellant.**

**Gen. No. 15,949.**

**Chicago Railway Equipment Company et al., Appellees, v. National Hollow Brake Beam Company.**
**On Appeal of Chicago Title & Trust Company, Trustee, etc., Appellant.**

**Gen. No. 15,982.**

1. CORPORATIONS—*restoration* of *dividends*. Where upon cross-bills of the pledgee and the trustee in bankruptcy of a minority holder it is alleged that a majority stockholder has wrongfully caused the declaration of a dividend and refuses to allow the shares of the minority holder to participate therein, except on conditions amounting to ratification of prior wrongful acts of the majority holder, the decree properly requires the dividend so wrongfully

declared to be refunded to the corporation by the majority stockholder, rather than ordering dividend payments to be made to the cross-complainants.

2. PLEDGES—*rights of pledgee of corporate stock.* The pledgee of corporate stock acquires no greater rights than the pledgor possesses at the time of the pledge.

3. BANKRUPTCY—*rights of trustee.* The trustee in bankruptcy of a corporate stockholder acquires nothing but the rights and remedies of the stockholder.

4. COURTS—*stare decisis.* A clearly and definitely expressed opinion by the Supreme Court as to the rights in corporate stock, though not in its strict sense an adjudication as against the stockholder, will be followed by the Circuit and Appellate Courts in further litigation involving the same stock.

5. RES ADJUDICATA—*what constitutes.* The fact that a cross-bill setting up among other things rights in corporate stock is dismissed for want of jurisdiction as not germane to the original bill, is not conclusive that such rights were not adjudicated, the same matters on which the rights are based having been set up by way of amended answer to the original bill.

6. RES ADJUDICATA—*what constitutes.* Where a cross-bill is dismissed as not germane as to questions of accounting, such fact is not conclusive as against other questions having been adjudicated which were incorporated also in the answer and in another cross-bill.

7. CORPORATIONS—*estoppel of stockholder.* Where a stockholder has participated with full knowledge in acts of the corporation ratifying particular transactions, his subsequent pledgee and his trustee in bankruptcy cannot attack such transactions.

8. COSTS—*solicitors' fees.* An allowance of $125 for solicitors' fees and expenses in procuring a decree on a cross-bill in injunction proceedings is not so small as to justify an interference with the discretion of the trial judge.

Appeal from the Circuit Court of Cook county; the Hon. JULIAN W. MACK, Judge, presiding. Heard in this court at the October term, 1909. Affirmed. Opinion filed October 7, 1912. *Certiorari* denied by Supreme Court (making opinion final).

H. H. C. MILLER and W. S. OPPENHEIM, for Louis L. Woods, appellant.

DEFREES, BUCKINGHAM, RITTER & CAMPBELL, for appellees.

GREGORY, POPPENHUSEN & McNAB, for Chicago Title & Trust Company, trustee, appellant.

Mr. JUSTICE BROWN delivered the opinion of the court.

The two appeals which are herein considered together (having been consolidated for hearing by order of the court on agreement of the parties) are by Louis L. Woods and the Chicago Title & Trust Company, respectively, from a decree of the Circuit Court of Cook county on cross-bills filed in the litigation entitled The Chicago Railway Equipment Company v. National Hollow Brake Beam Company et al., in which the decree of the Circuit Court rendered May 21, 1909, on the original bill was the subject of the appeal No. 16001, in this court. We have rendered a decision and handed down an opinion in that appeal, and have also decided and delivered opinions on appeals from a decree of the Circuit Court rendered May 25, 1909, on a cross-bill of the National Hollow Brake Beam Company in said litigation. Those appeals were by the National Hollow Brake Beam Company and by the Chicago Railway Equipment Company, respectively. They were numbers 16002 (see *post,* 619) and 15948 (see *ante,* 571) in this court.

The cross-bills on which the decree now under consideration was rendered on June 30, 1909, were four in number, denominated in said decree for convenience (with reference to the various cross-bills involved in the litigation) Cross Bill No. 2, Cross Bill No. 3, Cross Bill No. 4 and Cross Bill No. 5. A petition for solicitor's fees filed jointly by two of the cross-complainants was also disposed of by the decree as hereinafter indicated. Before stating the findings and orders of the decree it will be well to note the more material allegations and prayer of each of the cross-bills 2 and 3, which are the subjects of the appeals herein disposed of.

Cross-bill No. 2 was filed by Louis F. Woods, who, after reciting the pendency of the original bill to which he was a defendant, and his appearance and answer thereto, states, according to his view of the same,

576　　　Appellate Courts of Illinois.

Chicago Ry. E. Co. v. National H. B. B. Co., 173 Ill. App. 573.

(which accords with the Equipment Company's as set forth in the original bill,) the relations between the Equipment Company and the Beam Company (which have been the subject of the great amount of litigation alluded to in our opinion in 16001) down to the time of the so-called Rent Reduction Contract made by the acceptance by the Equipment Company and the Beam Company of Laughlin's proposition of March, 1898 (mentioned in our opinion in 16001). He then charges that on July 19, 1898, Laughlin made a proposition to the stockholders of the Beam Company for a release of the so-called rent exceeding five thousand dollars per annum, on condition that Laughlin would take up all the shares of stock of the Beam Company which might be presented to the American Trust & Savings Bank during October, 1898, and pay the face value thereof in money or bonds of the Equipment Company; that on September 10, 1898, the directors of the Beam Company authorized the reduction of rent on these terms; that the Equipment Company in accordance with the contract of rent reduction, did on October 1, 1898, pay to the American Trust & Savings Bank as trustee $122,500 in cash and its bonds to the amount of $285,000 and delivered to Laughlin 10,000 shares of its capital stock, and subsequently paid to the Beam Company $10,000 for its machinery and office fixtures; that at this time Laughlin and Leigh were each owners of 8,962 shares of the capital stock of the Beam Company and have so continued except as in the said cross-bill stated.

Further, that from 1888 to 1890 the relations of Laughlin and Leigh were very intimate and confidential, and Laughlin was Leigh's lawyer; that Laughlin induced Leigh to act as his agent about the payments by the Equipment Company in the "rent reduction" arrangement, "and informed Leigh that when said transaction was completed and the shares of stock of the other stockholders of the Beam Company were purchased with the money and bonds deposited with the

American Trust & Savings Bank as trustee, that then he and Leigh would be the equal owners of all the assets of the Beam Company and would divide the same between them and induced the said Leigh to carry through said negotiations and also personally to buy with the assets so placed by the Equipment Company in the American Trust & Savings Bank practically all the other shares of stock of said other shareholders in the Beam Company, and that said Laughlin further induced said Leigh, by reason of his position as said Leigh's attorney and of his promise as above stated, not to present his shares of stock in said Beam Company to the American Trust & Savings Bank as provided for in said Laughlin's proposition to the Beam Company and accepted by it under date of September 10, 1898.''

Further, that out of the cash and bonds turned over to the savings bank as trustee and with $5,000 additional taken from the treasury of the Beam Company, Laughlin acquired 24,798 shares of the stock of the Beam Company (which amount did not include Leigh's or Laughlin's stock), and afterwards acquired enough more shares, exclusive of those theretofore owned by Laughlin and Leigh, to make 26,223 shares; that all the money and mortgage bonds delivered to the savings bank represented an asset of the Beam Company; that by the payment of said cash and bonds the rent to be received by the Beam Company was reduced from over $55,000 a year to $5,000 a year for the nine succeeding years; that in anticipation of this ''rent reducing'' transaction, the Beam Company purchased or redeemed from various of its shareholders 5,273 shares of stock and retired the same.

Further, that Laughlin appropriated to his own use all the shares of stock so purchased by the moneys and obligations of the Equipment Company and the $5,000 of the Beam Company's money, and has refused to account to the Beam Company for the balance of the bonds and cash not so used, and ''now

578     Appellate Courts of Illinois.

Chicago Ry. E. Co. v. National H. B. B. Co., 173 Ill. App. 573.

claims to be the owner of all of said shares of capital stock of both of said companies so acquired by him with the assets of the Beam Company, which were paid by the Equipment Company for the purpose of securing a reduction of the so-called rent to said sum of $5,000 per annum;'' that Laughlin in the year 1900 ''broke off his friendly relations with Leigh and then announced that he personally was the owner of said 26293 shares of stock so purchased and also of the balance of the fund paid by the Equipment Company to the American Trust & Savings Bank for the purpose of securing a reduction of the so-called rent of the Beam Company, and repudiated his agreement with said Leigh to divide equally any part of the assets of the Beam Company, and claimed that said Leigh was the owner of 8962 shares of the capital stock of said Beam Company and that he, said Laughlin, was the owner of over 35,000 shares of the capital stock of said Beam Company, and that the remaining assets of said company would be distributed between them in accordance with the ownership of said shares of stock.''

Further, that through his domination of the Beam Company by his purchases of the stock presented to the savings bank in October, 1898, Laughlin has caused the balance of the assets of the Beam Company to be distributed to himself and one Kern, who claims to be the owner of 1,325 shares of stock, excepting $3.00 a share dividend paid to Leigh on his stock; that ''on or about January 3, 1905, Laughlin caused another dividend'' (called in the decree hereinafter described and appealed from, Dividend 36) ''of $1.00 per share to be declared by said Beam Company, but has declined to allow the stock owned by said Leigh to share in said dividend unless the same was deposited in the treasury of the Beam Company under such terms as would practically ratify all of the misdeeds and wrongs committed by said Laughlin against said Beam Company and said Leigh, and that such dividend has

never been paid on such shares of stock so owned by said Leigh;'' that all of the property of the Beam Company at present is real estate worth less than $50,000, on which Laughlin has caused a trust deed to be placed in his favor for $39,000, and claims against the Equipment Company of about $60,000, and that all the other assets of the Beam Company have been appropriated by Laughlin to his own use, with the exception of a dividend of $3.00 per share on the 8,962 shares of said Leigh and dividends in favor of Kern on his 1,325 shares.

The cross-bill then charges: That on February 20, 1905, all of the shares of stock owned by Leigh were pledged by Leigh to the cross-complainant Woods for the purpose of securing Woods against any loss on account of the sale by Leigh to Woods of certain accounts and stock for the sum of $12,000, said Leigh guaranteeing Woods that Woods would secure from said accounts and stock $12,000 with interest, and that Woods has not yet been able to realize any money whatsoever from said accounts or shares of stock, and now holds all of said shares of stock in said Beam Company as pledgee; that outside of the 26,223 shares before mentioned, there remains outstanding 19,290 shares, of which Laughlin claims to be the owner of 9,003 shares; that 1,325 shares are claimed by one Kern and one Brown, and that 8,962 of said shares are suit against Laughlin and its directors; that Laughlin has had elected a board of directors of the Beam Company subservient to his wishes, and that it would be unavailing for Woods to request the company as a corporation for redress, or to demand that it bring suit against Laughlin and its directors; that Laughlin is now causing the Beam Company to declare that it intends to engage in the business of the manufacture and sale of brake beams, and that no distribution of its assets will be made to Woods, and that the dividends of $3.00 per share on the 8,962 shares which was credited upon the indebtedness of Leigh to the

580    APPELLATE COURTS OF ILLINOIS.

Chicago Ry. E. Co. v. National H. B. B. Co., 173 Ill. App. 573.

Beam Company is all that Woods is entitled to upon said shares of stock; and further claims that he is now the owner of four-fifths of what remains of the property of the Beam Company, "whereas in equity and justice the shares of stock owned by Woods are entitled to an equal distribution in all of the said moneys, bonds and assets so wrongfully appropriated by said Laughlin;" that Laughlin induced Leigh to vote, at a stockholders' meeting of the Beam Company, all his shares of stock and the shares for which he held proxies, in favor of Laughlin's proposition to the Beam Company, upon the promise of Laughlin that should Leigh not present his shares of stock for purchase by said Laughlin in October, 1898, Leigh and Laughlin would subsequently divide the assets of the Beam Company after Laughlin had acquired the other outstanding stock out of the moneys and bonds paid by the Equipment Company; that Leigh acted under the belief that this promise would be carried out, and "labored under this belief until June 19, 1900, when Laughlin repudiated his understanding with Leigh and denied the right of Leigh to any part of the proceeds realized by said Laughlin from the Equipment Company, or to more than one-fifth of the balance of the assets of the Beam Co.;" that Laughlin has not paid to the Beam Company any portion of the rents owing by the Equipment Company over $5,000 a year, nor delivered anything to the Brake Beam Company in payment of his obligation to it, but used his influence as legal adviser of Leigh and the Beam Company for the purpose of defrauding the Beam Company and Leigh, and now pretends that the whole of the $407,500 procured from the Equipment Company is his private property.

The prayers of this cross-bill are (a) that the Beam Co., the Equipment Co. and Laughlin may answer it; (b) that an account may be taken of the amount due Woods under the agreement of 1892; (c) that Laughlin may be decreed to turn over to the Beam Co. all

moneys, stock and bonds received from the Equipment Co. to pay its indebtedness to the Beam Co., or (c) if the court holds said money, stock and bonds to be Laughlin's property under his contract, to pay the rent to the Beam Co. in excess of $5,000 per annum, then that Laughlin be decreed to pay with interest the 18 semi-annual installments becoming due after January 1, 1899, from the Equipment Co. to the Beam Co. over $5,000 annually; (d) that Laughlin may be decreed to pay to the Beam Co. all other moneys misappropriated by him from the treasury of the Beam Company as dividends or otherwise; (e) that a receiver of the Beam Company may be appointed to distribute its assets among its stockholders and creditors; (f) that in the meantime the Beam Company may be enjoined *pendente lite* from engaging in any business or distributing its assets; (g) that the Beam Company may be dissolved and its affairs wound up; (h) that the cross-complainant may have other and further relief, etc.

The Beam Company and Laughlin answered this cross-bill at great length, denying all the material allegations that appeared to justify the claim for relief set out, and particularly insisting that the material contentions had been in previous litigations adjudicated. The transcript of record *per praecipe* shows no answer by the Equipment Company.

Cross-bill No. 3 was filed by the Chicago Title & Trust Company as trustee of Leigh as an involuntary bankrupt, and makes the Beam Company, Laughlin, the Equipment Company and Woods defendants, and repeats all the allegations and prayers of Woods' cross-bill (cross-bill No. 2) except that for the allegation of a pledge to Woods of 8,962 shares of Beam Company stock owned by Leigh it substitutes:

"Your orator further states that by reason of the adjudication of bankruptcy and its election as trustee, it came into the possession of 1,575 shares of the stock of the National Hollow Brake Beam Company;

582     Appellate Courts of Illinois.

Chicago Ry. E. Co. v. National H. B. B. Co., 173 Ill. App. 573.

that on the 20th day of February, 1905, and prior to the commencement of said bankruptcy proceedings, the said E. B. Leigh for a pretended consideration gave into the possession of one Louis L. Woods 6,387 shares of the Beam Company stock." (This would seem to be a clerical error in the bill for 7,387.) "That at the time of said transfer the said Leigh also transferred to the said Woods a large amount of other assets, and your orator charges it to be that the said transfer to said Woods of said shares of stock was in fraud of the creditors of Leigh, and that Woods has no legal claim to the said stock, and that your orator is entitled to the possession thereof."

And to the prayers of the Woods bill is added one that "the rights of the Chicago Title & Trust Company and Louis L. Woods in and to the stock of the Beam Company may be determined."

To this cross-bill No. 3 Woods filed an answer admitting all its allegations except that relating to the title of Woods to shares of stock in the Beam Company. As to that it repeats the allegations of cross-bill No. 2, that all of the shares of stock owned by Leigh were validly pledged to Woods.

The Beam Company and Laughlin also filed answers to this cross-bill No. 3, substantially the same as those filed to cross-bill No. 2, except that they deny that the Trust Company came into possession of 1,575 shares of the Beam Company stock, but admit that it came into possession as trustee in bankruptcy of Leigh of certificates for a number of shares; deny also that before the bankruptcy Leigh gave into the possession of Woods 6,387 shares of Equipment Company stock, but alleges that Leigh did prior to said bankruptcy give into the possession of Woods certain certificates of Beam Company stock, the exact number of which is unknown to the Beam Company, but that said transfer was fraudulent and that Woods has no legal claim to the stock; that Laughlin claims that Leigh was allowed to retain said stock in connection with bonds belonging to Laughlin, and that until Leigh accounts

for the bonds neither he nor the Trust Company can be heard to assert any claim upon the ownership of the stock; that the Beam Company believes that the Trust Company is entitled to the stock divested of the claims of Wood and Laughlin, or that Laughlin is entitled to the stock divested of the claims of the Trust Company and Woods; that the Beam Company is willing to recognize as the owner of said stock whoever may be adjudged entitled thereto by a decree of court, and until their full rights are adjudicated the Beam Company cannot tell which of said parties is entitled to said stock.

Cross-bill No. 4 was a bill filed by Laughlin against Woods and the Trust Company, and cross-bill No. 5 was a bill filed by Laughlin against the Equipment Company. By the decree from which the appeals at bar by Woods and the Trust Company were taken demurrers were sustained to these cross-bills 4 and 5, on the ground that they were not germane to the subject matter of the original bill in the cause or of cross-bills 2 and 3. No appeal was taken from this part of the decree, and it is not involved herein.

The decree on these cross-bills 2, 3, 4 and 5 was entered as stated on June 30, 1909.

As to the cross-bills 2 and 3 it finds that the court has jurisdiction of all the parties and the subject matter of the same, and

(a) That (as between Woods and the Trust Company and as between them only) as to 8,962 shares of stock of the Beam Company, the ownership and the respective rights of the parties are that:

"Said Chicago Title & Trust Company as such trustee is the owner of said shares of stock subject to a lien thereon, in favor of said Louis L. Woods, to secure the guaranty of said Leigh that said Woods will realize the sum of $12,000 out of 24,300 shares of the preferred stock and 24,400 shares of the common stock of Dwight Furness Company, and out of the claim of said Leigh against said Dwight Furness

584    Appellate Courts of Illinois.

Chicago Ry. E. Co. v. National H. B. B. Co., 173 Ill. App. 573.

Company and against Dwight Furness, an individual, on open account or account stated, of whatsoever name or nature existing on February 20, 1905.''

(b) That an issue of 700 shares of capital stock of the Beam Co. to Laughlin and now held by him, and of 700 shares to one Allison held by him, under a resolution of the directors of the Beam Company on June 6, 1902, in payment of the respective salaries of Laughlin and Allison, was illegal and improper and should be returned by them to the corporation, and in lieu thereof they should be credited with the amount of money for which said stock was delivered to them, with interest.

(c) That the distribution of assets of the Beam Company, authorized by its directors January 3, 1905, known as dividend No. 36, was illegal and improper, and all moneys and credits granted under and by virtue of said distribution should be restored to the corporation by Laughlin, their recipient, and the resolution authorizing such distribution or dividend, and all proceedings thereunder, were illegal and void and should by corporate action be shown on the corporate record as rescinded and avoided.

(d) That the complainants in the cross-bills are entitled to recover from the Beam Company a reasonable solicitor's fee fixed at $250 on account of having recovered against said Beam Company the findings against it above mentioned and the decree for relief thereon.

(e) That (except as before specifically found) said cross-bills 2 and 3 are without equity.

The decree then carries these findings into effect by specific orders conforming to findings a, b, c, d and e, and denying, except as thus ordered and decreed, all the prayers of said cross-bills. From this decree Woods, the Trust Company, the Beam Company and Laughlin each prayed and was allowed an appeal; but the Beam Company and Laughlin, it is to be presumed, have abandoned their appeals, for although

criticizing the finding (c) and the order thereon, they assert in their argument here that they have acquiesced in that finding, and within thirty days from the decree did, as ordered, correct the corporate books in accordance therewith by proper alterations in the amounts of indebtedness shown from the Beam Company to Laughlin.

As to finding (b) they say (though this is denied by the appellant) that the decree was predicated upon consent and not on anything in the pleadings, and that Laughlin and Allison have exchanged the 1,400 shares for the equivalent in cash.

In the appeals before us Woods has assigned for error in the decree that the court erred:

1. In not appointing a receiver for the Beam Company.

2. In refusing to decree the payment of dividend No. 36 to Woods.

3. In refusing to wind up the affairs of the Beam Company and distribute its assets among its creditors and shareholders.

4. In refusing to direct an accounting between Laughlin and the Beam Company.

5. In refusing to enter a decree against Laughlin requiring him to pay all instalments of the rent of the Equipment Company to the Beam Company in excess of $5,000 per year after January 1, 1899.

6. In refusing to decree that Laughlin was not entitled, as against Woods, to dividends from the Beam Company upon 24,798 shares.

7. In refusing to enter a decree against Laughlin requiring him to account to the Beam Company for moneys, stock and bonds received by him from the Equipment Company for the purpose of paying its obligations to the Beam Company.

8. In refusing to order Laughlin to pay to the Beam Company, with interest, $5,000 which had been taken from its treasury to pay the debt of Laughlin.

9. In decreeing too small an amount for solicitor's

586　　Appellate Courts of Illinois.

Chicago Ry. E. Co. v. National H. B. B. Co., 173 Ill. App. 573.

fees and expenses in procuring the decree in this cause.

The Chicago Title and Trust Company has assigned the same nine alleged errors, merely substituting its name for that of Woods in the 2nd and 5th assignments, but has added as assignments:

"10. The Circuit Court erred in finding that Louis L. Woods has a lien to the extent of Twelve Thousand Dollars as against 8,962 shares of the capital stock of National Hollow Brake Beam Company, owned by Chicago Title & Trust Company, trustee, appellant.

"11. The Circuit Court erred in decreeing that Louis L. Woods had any lien or interest in the 8,962 shares of National Hollow Brake Beam Company stock held by Chicago Title & Trust Co., trustee of Edward B. Leigh, bankrupt."

We have stated the contents of the cross-bill involved herein at some length, because the variety and complexity of the contentions seem to render it necessary in order to make our opinion intelligible. But much discussion of the causes in their decision would not, in our view, be useful.

As to assignments of error 1 and 3, our opinion in 16001 is sufficiently explicit. The contention of the appellants in the present appeals as to these assignments is that of the appellant in 16001, namely, that the contract of 1892 between the Equipment Company and the Beam Company required the Beam Company's affairs to be wound up. We have said in our opinion in 16001 we do not agree with this contention.

In relation to the assignment of error 2, we think the chancellor's method of dealing with the dividend in question was preferable to that urged by the appellant, if, as is claimed and was held by the chancellor, the restrictions on its payment made at the time of its declaration were illegal and improper.

In deciding on the assignments of error from 4 to 8, inclusive, the first matter to be considered, in view of former adjudications which are relied on by the appellees to sustain the decree is the relation be-

tween the appellants Woods and the Trust Company to Leigh. Woods claims (and was held) to have become the pledgee from Leigh of 8962 shares of Leigh's stock in the Beam Company on February 20, 1905, long after all the transactions made the basis by cross-complainants of their claim of mismanagement and fraud in the affairs of the Beam Company were concluded. We think that Woods stepped into Leigh's shoes as stockholder in the Beam Company, with no greater rights as such stockholder than Leigh at that time possessed.

Whatever disability or exclusion from relief and whatever adjudication then existing or afterward entered declaring a status or disability of a time preceding February, 1905, affected the stock of Leigh or the personal rights of Leigh as a stockholder at the time of the pledge, also attached to and affected Woods and his rights as a stockholder when he became pledgee.

The Trust Company is the trustee in bankruptcy of Leigh, and the bankruptcy was adjudicated in November, 1906. Of course it could and did take nothing but the rights and remedies of Leigh in relation to this stock of the Beam Company.

It would seem to be intimated by the Reply Brief of appellant Woods in 15949 that adjudication against Leigh in a controversy with Laughlin over the beneficial ownership of the 26,223 shares of stock in the Beam Company purchased, as the appellants herein claimed, by Laughlin with trust funds, is not, in the opinion of appellants, conclusive in this litigation on the rights of Woods or the Trust Company as stockholder of the Beam Company in relation to an interest in these shares or in the assets of the company represented by them. With this contention we cannot agree. Woods and the Trust Company in this litigation are to our minds in precisely the same position and with the same rights as Leigh would have if the cross-bills were his—no more and no less—and if

there has been by any court of competent jurisdiction an adjudication which would be binding on Leigh on his rights and claimed remedies, it is binding also on Woods and the Trust Company. And, moreover, if even under circumstances which do not make it an adjudication against Leigh in the strict sense, there has been clearly and definitely expressed by the Supreme Court of this state, when the same facts and evidence were before them in any case, the opinion that Leigh had no rights in the stock in question, but that it was the individual property of Laughlin, and that the actions or acquiescence of the Beam Company procured by Laughlin through his ownership of said stock were legal and binding on its stockholders, and settled its rights in this involved litigation, that opinion was binding on the Circuit Court and is binding on us to the extent that it would be presumptuous and improper for us to refuse to follow it. Therefore it becomes us to consider what have been such adjudications and opinions, if any.

In January, 1901, Laughlin filed a bill in chancery in the Circuit Court against Leigh, claiming the ownership of the 26,233 shares of stock, 13,111 of which he contended Leigh had fraudulently had transferred into his own name.

The Circuit Court decided this case against Laughlin and dismissed the bill. On appeal to the Appellate Court, however, the Branch Appellate Court reversed this judgment and in an elaborate opinion reviewing the evidence reached the conclusion that the proofs did not sustain Leigh's claim to ownership, and remanded the cause to the Circuit Court with directions to grant Laughlin the specific relief prayed in his bill. Laughlin v. Leigh, 112 Ill. App. 119. Leigh appealed in his turn to the Supreme Court from the Appellate Court. The Supreme Court declared that it agreed with the conclusions of the Appellate Court and affirmed its judgment. Leigh v. Laughlin, 211 Ill. 192.

In June, 1902, the Beam Company filed in the Cir-

cuit Court a bill against Leigh and certain other persons to enjoin them as acting as directors of said company under an alleged election which depended for its validity on the pretended ownership by Leigh of one-half of the 26,223 shares of stock in question. This alleged election was held in May, 1902, after the Circuit Court had decided in Leigh's favor the question of such ownership as hereinbefore stated, and before the Appellate Court had reversed that decision.

A preliminary or interlocutory injunction was granted by the Circuit Court in this case, which was sustained by this court as a proper method of preserving the *status quo*. Leigh v. Beam Co., No. 10,656 in this court. Leigh v. Beam Co., 104 Ill. App. 438.

The cause did not reach a final decree in the Circuit Court until after the final decision in Leigh v. Laughlin, before referred to—211 Ill. 192.

The Circuit Court entered a decree in accordance with the prayer of the bill and perpetually enjoined Leigh and those other directors, who owed their alleged election to the voting by Leigh of that portion of the stock in controversy, which he claimed. Leigh appealed directly from this decree to the Supreme Court, and the appeal was there entertained because, as we read the opinion rendered by the Supreme Court, "the cross-bills" (filed in the cause) "asked the forfeiture of the franchise of the appellee company for nonuser."

Quotations from the opinion of the Supreme Court —Leigh v. Beam Co., 224 Ill. 76—will show how definitely that court expressed its opinion as to the ownership of the 26,233 shares in question:

"The greater part of the important facts connected with this case are set out at length in Laughlin v. Leigh, 112 Ill. App. 119, and on appeal of the same case to this court in Leigh v. Laughlin, 211 Ill. 192, and need not be here repeated. The main issues in this case arise out of the question as to who were the legally elected secretary and treasurer and who were the legally elected directors of the National Hol-

low Brake Beam Company at the date this bill was filed. This question hinges in its turn upon the ownership of the 26,233 shares of stock which was the chief subject of contention in Leigh v. Laughlin, *supra.* * * * The crucial point, as has been said, is the ownership of the 26,233 shares of the National Hollow Brake Beam Company. Appellants, in their original answer asserted that one-half or 13,111 shares of said stock belonged to Leigh. It is evident that that was the contention of Leigh from the very beginning of the controversy between him and Laughlin until after the rehearing in Leigh v. Laughlin, *supra,* was denied by this court October 17, 1904, when he for the first time shifted his claim in that regard."

(NOTE. This refers not only to an amended and supplemental cross-bill filed by Leigh in the Circuit Court on November 16, 1904, and hereinafter commented on, but to an amendment of his answer containing the same allegations concerning the beneficial ownership of the stock in question by the Beam Company as was made in the amended and supplemental cross-bill.)

"As we understand arguments of counsel and the statements in the cross-bill, appellants now contend that Laughlin, instead of being the owner of said 26,233 shares of stock, having used the assets of the National Hollow Brake Beam Company for purchasing them, holds them in trust for that corporation. * * * With numerous citations of authorities * * * counsel for the appellants have attempted to show that this court in Leigh v. Laughlin, *supra,* did not decide that Laughlin was the actual owner of these shares of stock. The decision in that case, they say, did not attempt to 'breathe the breath of life into these certificates of stock.' They claim that that decision merely held that Leigh failed to establish a contract that he was entitled to possession of one-half of said shares; that the court did not attempt to decide whether those shares were 'living or dead;' that it only determined that Leigh was not entitled 'to the physical possession of one-half of said stock.' In the face of the reasoning in that decision, taken in connection with the decision in the same case by the Appellate Court, *supra,* the conclusions in which latter case are upheld by this court in Leigh v. Laughlin, *supra,* it is difficult

to understand how appellants can seriously contend that the decision does not settle the ownership of this stock. * * * If the contention in appellants' argument and cross-bills be upheld and the said 26,233 shares of stock belong to the corporation, Leigh and Laughlin will be the owners of substantially all of said stock, and if that contention be upheld, Leigh would indirectly accomplish what he attempted to accomplish directly in the former suit of Leigh v. Laughlin, *supra,* and he is forced to admit that this court has decided that he, Leigh, is not entitled to one-half the stock. If the ownership of this stock was decided to belong to Laughlin in Leigh v. Laughlin, *supra,* then the chief question in this case is *res judicata.* Appellants assert that it cannot be so held because the parties to this suit are not the same as the parties to Leigh v. Laughlin, and that the issues are not the same. If Laughlin and Leigh were the owners of substantially all the stock of the National Hollow Brake Beam Company, then the controlling fact in this suit, as in the former suit, affects in reality only these two, and it is well settled that where some controlling fact or question material to the determination of both causes has been adjudicated in a former suit before a court of competent jurisdiction, and the same question is again at issue between the parties, its adjudication in the first case, if properly presented, will be conclusive of the question whether or not the cause of action be the same in both suits. * * * The ownership of the 26,233 shares of stock was also the controlling fact in Leigh v. Laughlin, *supra.* Laughlin had to uphold his contention in the former suit by the strength of his own title—not only as against Leigh but against everyone else. Leigh is estopped in the present hearing from attempting to show that these shares belonged to the National Hollow Brake Beam Company instead of Laughlin. He should have urged that in the former suit between him and Laughlin, admitting it to be the fact. * * * This court held in Leigh v. Laughlin, *supra,* not only that Laughlin was not entitled to the physical possession of one-half of this stock, but that the actual ownership was in Laughlin. The present

592     APPELLATE COURTS OF ILLINOIS.

Chicago Ry. E. Co. v. National H. B. B. Co., 173 Ill. App. 573.

case was started some two years before the decision in the former suit. Appellant Leigh is estopped from shifting his ground as to the ownership of the disputed shares of stock after that decision was handed down. The ownership of these shares of stock was finally settled in the former case of Leigh v. Laughlin, *supra*, and this court cannot permit the question to be reviewed in this case. Laughlin being the owner of this stock, he was entitled to vote it in the transaction of all business of the corporation. * * *

"Appellant Leigh is in no position to ask for a forfeiture of the charter of the National Hollow Brake Beam Company on account of the abandonment of its corporate existence. He has been an official of that company and a party to all of its alleged illegal acts from the very outset. No one had a fuller knowledge or was more active as an officer or stockholder for the carrying on of said alleged illegal acts than he himself.

"*On this account he has set up nothing in his crossbill on this point that entitles him to relief.* * * * For substantially the same reason the other appellants cannot complain in this regard."

(NOTE. This refers to the second amended cross-bill filed by Laughlin, which the Supreme Court says "set forth *among other matters* that the Company was not a going concern and its assets should be divided among the lawful stockholders, excluding the 26233 shares in dispute; that the said Leigh and Laughlin were substantially the sole owners of the stock and assets of said National Hollow Brake Beam Company," and to a cross-bill filed by Ahrens and Geer, two of the alleged directors elected at the election held invalid, which the Supreme Court says set up "substantially the same facts as are set up in the second amended cross-bill of Leigh." Demurrers had been sustained to both by the Chancellor in the Circuit Court, and the cross-bills had been dismissed for want of equity.)

"*The question of accounting between Leigh and Laughlin as to many of their transactions covering years, as raised in the cross-bill, was not germane to the questions presented in the original bill. The decree should have dismissed Leigh's amended and supplemental cross-bill for that reason and not for want of equity.* * * *

"*The decree will be modified in this respect so as to read, 'the amended and supplemental cross-bill of Edward B. Leigh be and the same is dismissed for want*

*of jurisdiction.'* The decree as thus modified is affirmed."

We have italicized the portions of the quotation relating to the amended and supplemental cross-bill of Leigh because on them is founded the argument by the appellant Woods herein that the question of the ownership of the stock and the money and bonds with which it was bought has not been adjudicated as between the Beam Company and Laughlin.

"The only time," counsel say, "the rights of the Beam Company were attempted to be enforced against Laughlin was in the cross-bill filed in the name of Leigh in a suit brought by Laughlin and the Beam Company for a receiver of the Beam Company's assets. This cross-bill was dismissed by the Circuit Court for want of equity, but on appeal the decree was reversed by the Supreme Court and the cross-bill was ruled to be not germane to the original bill and was dismissed for want of jurisdiction."

This statement leaves out important factors in the situation. First, the amended answer of Leigh to the original bill, on which amended answer, with the other pleadings, the cause was heard and decided, sets up the same matter, as far as the alleged ownership of the stock and bonds by the Beam Company and the trusteeship of Laughlin go, as was set up in his cross-bill so dismissed. Secondly, the cross-bill of Ahrens and Geer, the dismissal of which for want of equity was sustained, set up the same matter also. Thirdly, the Supreme Court says that it was the allegations which raised "the question of accounting between Leigh and Laughlin as to many of their transactions covering years," that were not germane to the questions presented in the original bill.

The cross-bill of Leigh evidently originally contained such allegations, to which the last amendments merely added those with which we are concerned here, and it was apparently the original and not the amen-

594        APPELLATE COURTS OF ILLINOIS.

Chicago Ry. E. Co. v. National H. B. B. Co., 173 Ill. App. 573.

datory allegations that led to the modifications of the order of dismissal.

To apply to the case in 224 Ill. the language which the Supreme Court in that case applied to the one in 211 Ill., "It is difficult to understand how appellants can seriously contend that that decision does not settle the ownership of this stock."

And in any event and in any view, as we hold that Woods and the Trust Company in the present case have only the rights which Leigh would have, the fact that Leigh actively participated, with full knowledge, in all the actions of the Beam Company, which on their face foreclose that company from seeking to undo what it has formally assented to, both as to the ownership of the stock in question and as to the reduction of rent, would also foreclose Woods and the Trust Company from enforcing such claims as it is making as "minority stockholders suing in behalf of the corporation for redress for injuries done the corporation by the majority stockholders" as the reply brief of Woods puts it.

These considerations dispose, as we hold, of all the assignments of error from 4 to 8, inclusive. We do not think after full consideration that assignment 8 differs from the others in this respect.

The additional assignments made by the Trust Company, Nos. 10 and 11, raise a different question—a question between Woods and the Trust Company. We have considered it with much care, for it is undeniable that the testimony of Leigh on which the decree giving Woods a lien on the 8,962 shares involved is based, was on cross-examination vague, indefinite and unprecise, and that many matters appear tending to throw suspicion on the good faith of the alleged pledge. It would be useless in our opinion to add to the length of this opinion by discussing it. We have concluded that the chancellor was on the whole right in holding that the direct evidence of Leigh (Rec. 248) was not overcome, and that the lien must be upheld.

Assignment 9 in both appeals is that the chancellor decreed too small an amount for solicitor's fees and expenses in procuring the decree on the cross-bills of Woods and the Trust Company when granting the allowance prayed for by the petition filed by Woods and the Trust Company on the day the decree was entered. The chancellor allowed $250 ($125 each). We do not feel justified in altering this order. Such allowances must under all ordinary circumstances rest largely in the discretion of the trial judge.

The decree as a whole is affirmed, and the same order will be entered in both appeals, Nos. 15949 and 15982.

*Affirmed.*